### In re BLINDER ROBINSON & CO., INC., Debtor.

### SECURITIES INVESTOR PROTECTION CORP., and Glen E. Keller, Jr., Trustee for the liquidation of the business of Blinder, Robinson & Co., Inc., Appellants,

v.

### Christos STELLATOS, Olinka Podany and Paul P. Tan, Appellees.

### Civ. A. No. 93–K–213.

United States District Court, D. Colorado.

July 6, 1994.

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, DC, for SIPC.

Thomas C. Bell, Davis, Graham & Stubbs, Denver, CO, for Glen E. Keller, Jr.

George Poulos, Astoria, NY, for Christos Stellatos.

Paul P. Tan, pro se.

Olinka Podany, pro se.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Given the exigencies of this case I have determined that oral argument would not assist me materially in reaching a decision and therefore decide it on the briefs.

Glen E. Keller, Jr., Trustee of Blinder, Robinson & Company, Inc., ("Trustee"), and the Securities Investor Protection Corporation, appeal jointly from Bankruptcy Judge Sidney Brooks' January 14, 1993 "Order Approving Certain Late–Filed Claims as Timely Filed" and all oral findings of fact and conclusions of law relating thereto. The late-filed claims referred to in the order are those of Appellees, Christos Stellatos, Paul P. Tan and Olinka Podany.

Appellants argue the bankruptcy court erred in finding: (1) A claim filed after the expiration of the statutory period delimited by the Securities Investor Protection Act, 15 U.S.C. § 78fff–2(a)(3), which does not fall within any of the statutory exceptions to the time bar, may nevertheless be allowed; (2) Where a claimant has been accorded compliance with the notice provisions of SIPA § 78fff–2(a)(3), the Trustee's refusal to accept a claim filed after the statutory time period as a "customer" claim, may violate the claimant's constitutional rights.

Appellants also challenge the bankruptcy court's findings of fact that (1) Podany, had proven by direct and substantial evidence that she did not receive the Notice mailed by the Trustee, and (2) Stellatos did not have actual notice of the liquidation proceeding within the six month period. (Stellatos argues the bankruptcy court clearly erred in finding Appellees were actually mailed notice.)

I find the bankruptcy court's finding that the Trustee had mailed the Notice to Stellatos and Tan was clear error. I also find Podany falls within one of the statutory exceptions to the time bar provision. I therefore do not reach the legal issues raised by Appellants. For the reasons hereafter stated, I affirm.

### I. *Background.*

■ The Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–78*lll*, was enacted to protect customers of securities broker-dealers against losses which might occur as a result of the financial failure of broker-dealers. *See Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 421, 95 S.Ct. 1733, 1738–39, 44 L.Ed.2d 263 (1975). SIPA established the Securities Investors Protection Corporation ("SIPC") to maintain an insurance fund by levying assessments upon the revenues of the brokerage firms which it regulates. 15 U.S.C. § 78ccc.

If a brokerage firm is liquidated under SIPA, its customers will receive the full value of the funds and/or securities which they had on deposit provided the customers file appropriate claim forms in a timely manner. If a customer fails to do so, those securities are liquidated and the proceeds become part of the general estate. Such customer then becomes a general unsecured creditor who may or may not receive a pro rata share of his or her actual investment from the general estate.

### II. *Findings of Fact.*

In this SIPA liquidation proceeding, the bankruptcy court made the following findings of fact: On July 31, 1990, Blinder, Robinson & Company, Inc. ("Debtor") filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. On August 1, 1990, on the application of the SIPC, the district court, Judge Weinshienk presiding, appointed Glen E. Keller, Jr., as trustee for the liquidation of the Debtor under § 78eee(b)(3) of SIPA, ("Trustee"). Pursuant to § 78eee(b)(4), the liquidation proceeding was removed to the bankruptcy court.

On August 8, 1990, the bankruptcy court entered an "Order Approving and Adopting Trustee's Application." (R.Doc. 14.) Following that order, on or before August 14, 1990, the Trustee caused a "Notice to Customers and Creditors of Blinder Robinson & Company, Inc." (the "Notice"), (R.Doc. 12, Ex. A), to be mailed to approximately 220,000 customers and other creditors of the Debtor and to be published in twenty-six newspapers throughout the United States as well as all editions of the Wall Street Journal. The court found the Notice was mailed, together with a customer claim form, to Appellees, Podany, Tan and Stellatos on or before August 14, 1990.

The Notice stated, *inter alia,* "No claim of any kind will be allowed unless filed within six (6) months after the date of this Notice." *Id.* The six month period expired on February 14, 1991. Podany filed her claim with the Trustee in April 1991, Stellatos, by letter dated May 11, 1991 and Tan on April 17, 1992. The Trustee rejected each of these claims as untimely. On January 14, 1993, the bankruptcy court issued an "Order Approving Certain Late–Filed Claims as Timely–Filed," (R.Doc. 3239), and a judgment to the same effect, overruling the Trustee's rejection of Appellees' claims. The Trustee and SIPC filed a timely Joint Notice of Appeal on January 22, 1993.[1]

On August 11, 1990, Olinka Podany travelled to France. While in France, on August 25, 1990, Podany was involved in a serious automobile accident and suffered severe injuries. She was in a coma for a period of time after the accident and was severely debilitated for a much longer period of time. Severe facial injuries led to a period of substantially decreased visual ability. Podany had multiple surgeries in the following months.

Only in April 1991, two months after the deadline for filing claims, was Podany physically able to review the correspondence that had accumulated during her convalescence. Podany reviewed the Notice and sent a completed claim form to the Trustee. The Trustee sent Podany a determination letter

stating her claim was untimely. Podany objected to the determination.

Paul Tan lives in a community in Maryland begun around 1988. The community was originally to receive its postal service from Gaithersburg, Maryland and to share its 20878 zip code. Later, the service was changed to postal facilities in Darnestown, Maryland to the west but still within the 20878 zip code. Initially the new residents used either Gaithersburg or Darnestown as their mailing addresses in a rather haphazard fashion based upon conflicting information disseminated by developers and longertime residents of the area. Only recently has the area become known as North Potomac, Maryland.

Tan, a member of the Postal Issues Committee of the North Potomac Citizens Association, maintains the postal service has been unusually poor. The court found the postal service to the community was of consistently poor quality, caused mainly by severe overcrowding of the postoffice and the need for separate zip codes for the different communities.

Tan did not receive the Notice, addressed to 12509 Lloydminster Drive, Darnestown, Maryland 20878. Darnestown was one of three city names used by residents of the community at one time or another. Tan does not subscribe to any newspapers, only buying single issues sporadically, usually on weekends. Tan only learned about the downfall of the Debtor after receiving a "cold call" from another brokerage firm in April 1992, approximately fourteen months after the deadline. He filed a claim that was received by the Trustee on April 17, 1992. The Trustee responded with a determination that the claim was untimely. Tan objected to the determination.

Christos Stellatos immigrated to the United States from Greece and works as a cook in a delicatessen. He did not finish high school. His principal language is Greek and he neither reads nor writes English well. He has never read the Wall Street Journal nor the New York Times. Stellatos bought 200 shares of AT & T stock, 60 shares of

1. SIPC provides: "SIPC shall be deemed to be a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard." 15 U.S.C. § 78eee(d).

IBM stock and 300 shares of Contact Scientific Corporation stock nine years ago for his children's college education and has not traded since. He has not taken any distributions in cash, but, instead, has continually reinvested them.

In January of each year, Stellatos received a 1099/DIV Dividend and Distributions Interest Income Statement with respect to the securities. In January 1991, Stellatos received a 1099/DIV statement with the notation in the upper left-hand corner: "Glen E. Keller, Jr., Trustee for the liquidation of Blinder Robinson." The telephone numbers on the statement were, however, the same as on the previous 1099/DIV statements.

On May 11, 1991, Stellatos, through his wife, sent the following handwritten letter to the Trustee:

To Whom it may concern:

I've repeatedly tried to get in touch with you with the phone numbers listed on my statements but to no avail.

I have not received anything from you for months. Enclosed please find my last statement. I have been awaiting notice from you regarding the liquidation of Blinder, Robinson & Co, but obviously I was overlooked.

I feel I've waited long enough to be sure that either you never tried to notify me or your attempts to try have failed.

Please take this letter into consideration as I am awaiting your response as to where I stand.

Sincerely, Chris Stellatos

I.D. # 080–60–2971

Stellatos testified he never received the Notice and the bankruptcy court found his letter substantiated his position. Although Stellatos' argued there were inconsistencies and inadequacies in the Trustee's proof of mailing, the bankruptcy court was satisfied the customer claim packets, totalling 221,242, were at least placed into the custody and control of the United States Postal Service, although their ultimate fate was less certain. The Trustee treated Stellatos' letter as a formal claim and sent a determination letter deeming the claim to be untimely. Stellatos objected. The bankruptcy court found the objection was timely filed.

III. *Standard of Appellate Review.*

■ In reviewing a bankruptcy court decision, I must accept the court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous. Bankr.R. 8013; *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399 (10th Cir. 1986). I must also give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses. *Id.* Conclusions of law are reviewed *de novo. Id.* at 399–400.

IV. *Merits.*

A. *Christos Stellatos.*

■ Section 78fff–2(a)(1) of SIPA provides in pertinent part:

(a) **Notice of claims.—**

(1) **Notice of proceedings.**—Promptly after the appointment of the trustee, such trustee shall cause notice of the commencement of proceedings under this subsection to be published in one or more newspapers of general circulation in the form and manner determined by the court, and at the same time shall cause a copy of such notice to be mailed to each person who, from the books and records of the debtor appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor.

15 U.S.C. § 78fff–2(a)(1).

The bankruptcy court found the Trustee had mailed to each Appellee, at the address that appeared in the Debtor's records, a customer claim packet containing the Notice and a customer claim form on or before August 14, 1990. In addition, the court found the Trustee had published notice in twenty-six papers of general circulation throughout the United States, including all editions of the *Wall Street Journal.*

Stellatos argues the court was clearly erroneous in its finding the Trustee had mailed customer claim packets, including the Notice, to Appellees on or before August 14, 1990. He maintains the evidence before the court

was insufficient to support such finding. In particular, Stellatos challenges the sufficiency of the affidavit of Denise E. Thorpe which was submitted as proof that the Trustee mailed the customer claim packet to him. (Supp. Reply Br. Appellants Doc. 6.) Thorpe stated in her affidavit dated February 26, 1992, that she had reviewed the mailing list referred to in the Certificate of Mailing dated March 6, 1991 for the names and addresses of former customers of the Debtor whose claims were scheduled for certain hearing dates and attached copies of pages of that mailing list which included Stellatos' name and address. Stellatos asserts that, if the March 6, 1991 date refers to the mailing list at that date, the list could have been changed between the time of mailing in August 1990 and when Thorpe reviewed it in March 1991. If, on the other hand the certificate of mailing dated March 6, 1991 was intended to be contemporaneous with the August 1990 mailing, it was flawed for lack of contemporaneity.

Stellatos raised these arguments at the time of the hearing before Judge Brooks. The Trustee then asked the court to take judicial notice of an exhibit which had been admitted into evidence before at a hearing when the Trustee was present. The exhibit consists of the affidavit of the Trustee dated December 3, 1991 (Supp. Reply Br. Appellants Doc. 4) and attached exhibits A through J. Exhibit C is a certificate of mailing dated March 6, 1991, signed by the Trustee in which he states he caused the customer claim packets to be mailed in the manner shown and on the dates listed on an attached affidavit of mailing signed by Joanne Walzl of RTC Direct Mailing, Inc. (*Id.*, Ex. C.) Walzl's "Affidavit of Mailing" states:

> *Joanne Walzl, RTC Direct Mailing, Inc.* being duly sworn and deposed says she is an Authorized Representative of R.R. Donnelley and Sons Company received [sic.] 223,147 furnished pressure sensitive address labels bearing the names and addresses of registered customers, brokers and creditors of Blinder, Robinson & Company, Inc.
>
> That on the 9th, 10th, 11th, 12th and 13th days of August, 1990 she supervised the

insertion and mailing for First Class mail and caused such materials to be deposited in the U.S. Postal System at Hamburg, Pennsylvania on *August 10–13, 1990.* (*Id.*, Ex. B.)

Stellatos argues Walzl's affidavit is defective as a matter of law because it is not dated nor affirmed in the proper manner. Stellatos relies on 28 U.S.C. § 1746 which states that, whenever, under any law or rule in the United States, any matter is required to be supported by a sworn declaration, such matter can be evidenced by

> the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . . .
>
> (2) If executed within the United States ... "I declare ... under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746.

■ While courts have not required strict compliance with the exemplary wording in the statute, an unsworn declaration not made under the penalty nor stating the document is true will not satisfy the verification requirement under 28 U.S.C. § 1746. *See Smith v. Muscatell (In re Muscatell),* 106 B.R. 307, 309 (Bankr.M.D.Fla.1989). Therefore, it is questionable whether Walzl's affidavit was correctly admitted by the court as proof of mailing. Walzl's failure to date her affidavit, on the other hand, will not render it invalid as the date or proximate date is demonstrable by reference to the attached "Mailing for Liquidation of Blinder, Robinson & Co., Inc." document dated August 13, 1990 and copies of U.S. postal statements of mailing dated August 10–13, 1990. *See E.E.O.C. v. World's Finest Chocolate, Inc.,* 701 F.Supp. 637, 639 (N.D.Ill.1988).

Even if Walzl's affidavit is regarded as admissible evidence, there is no evidence that the mailing labels attached to the customer packets in Shoemaker, Pennsylvania between August 9 and 13, 1990, were compared with the mailing list held by the Trustee in Denver, Colorado at that time. Notably, Exhibit

D to the Trustee's affidavit dated December 3, 1991, reflects mailings on August 31, 1990 to an additional fifty-six pages of customers and creditors and Exhibit E shows mailings to a further twenty-one pages of customers and creditors on October 15, 1990. This indicates the mailing list as it existed at the beginning of August, 1990 was thereafter supplemented.

The only evidence that Stellatos' name was on a mailing list used by the Trustee is the affidavit of Denise Thorpe to the effect that she had reviewed a mailing list dated March 6, 1991 and had found a page containing the name of Stellatos. This is insufficient to prove either that Stellatos' name appeared on a mailing list in August, 1990 or that a customer packet was mailed to him in August, 1990. Likewise, the Trustee's December 3, 1991 affidavit and the declarations on which he relies leave a lacuna as to proof of mailing to Stellatos in August 1990. I therefore determine the bankruptcy court's finding that the Trustee had mailed a customer packet to Stellatos was clearly erroneous.

■ Accordingly, I find the Trustee only gave notice to Stellatos through publication in various newspapers and failed to mail notice to him in compliance with SIPA § 78fff–2(a)(1). In *Mullane v. Central Hanover Bank & Trust Co.*, the Supreme Court held: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Court held notice by publication alone, was "not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 S.Ct. at 659. I conclude Stellatos was not only deprived of the requisite notice by mail under § 78fff–2(a)(1) but also of his Fourteenth Amendment right of due process. I further find, because the Trustee did not comply with the notice provisions of SIPA, the six-month time bar did not come into play and Stellatos' claim should be treated in the same manner as a timely-filed customer claim.

### B. *Paul Tan.*

I also find the bankruptcy court clearly erred when it found a customer packet was mailed to Paul Tan on or before August 14, 1990. The only evidence that Tan's name was on a mailing list used by the Trustee is the affidavit of Marilyn Moll dated November 10, 1992, to the effect that she had reviewed the mailing list dated March 6, 1991 and had found a page bearing the name and address of Tan. The court's finding that this affidavit constituted proof that Tan's name was on the mailing list in August 1990 or that the Trustee mailed a customer packet to him before August 14, 1990 was clear error. Therefore, for the reasons stated above with regard to Stellatos, I treat Tan's claim as a timely-filed customer claim.

### C. *Olinka Podany.*

■ Section 78fff–2(a)(3) of SIPA pertinently provides:

(3) **Time limitations.**—No claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice under paragraph (1) shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for filing of a claim by the United States, by a State ... or by an infant or incompetent person without a guardian. Any claim of a customer for net equity which is received by the trustee after the expiration of such period of time as may be fixed by the court (not exceeding sixty days after the date of publication of notice under paragraph (1)) need not be paid or satisfied in whole or in part out of customer property, and, to the extent such claim is satisfied from moneys advanced by SIPC, it shall be satisfied in cash or securities (or both) as the trustee determines is most economical to the estate.

15 U.S.C. § 78fff–2(a)(3).

The bankruptcy court found Podany travelled to France before the Trustee had mailed and published the Notice and that on

August 25, 1990, she was involved in a serious automobile accident and suffered severe injuries. She was in a coma and was severely debilitated for a much longer period of time thereafter. Podany learned of the liquidation and filed her claim in April 1991, two months after the deadline for filing claims.[2]

Section 78fff–2(a)(3) allows for the filing of a claim after the six month period by an incompetent person without a guardian provided the court has, upon application within the six month period, granted a fixed extension for filing such claim. Black's Law Dictionary defines "incompetency" as:

> Lack of ability, legal qualification, or fitness to discharge the required duty or professional obligation. A relative term which may be employed as meaning disqualification, inability or incapacity and it can refer to lack of legal qualifications or fitness to discharge the required duty and to show want of physical or intellectual or moral fitness. *County Bd. of Ed. of Clarke County v. Oliver*, 270 Ala. 107, 116 So.2d 566, 567.

*Black's Law Dictionary* 765 (6th ed. 1990).

 The bankruptcy court found Podany was disabled from August 25, 1990 until after the expiration of the six month period. She lacked the ability to discharge her required duty to file a claim during that period or to apply for an extension of time to do so. I find that Podany was an incompetent without a guardian during the six month filing period and that, had she applied to the court for an extension of the six month filing period under § 78fff–2(a)(3), cause existed to grant a reasonable extension of time for filing of her claim. SIPA is remedial legislation which should be construed liberally. *In re First State Securities Corp.*, 34 B.R. 492, 496 (Bankr.S.D.Fla.1983). To interpret the statutory exception of incompetency narrowly so as to exclude a person in Podany's circumstances is contrary to the purpose of SIPA to protect the insolvent broker's customers. *See id.*

**IV.  *Conclusion.***

I affirm the bankruptcy court's order that Appellees' claims shall be treated in the same manner as timely filed customer claims, that their objections to the Trustee's determinations are sustained and that the Trustee's determinations are overruled.

---

**2.**  The Trustee asks me to find the bankruptcy court's finding that Podany had proven by direct and substantial evidence that she did not receive the Notice was clearly erroneous. Since I conclude Podany was incompetent and falls within a statutory exception to the time bar provision, I do not reach this factual issue.