**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re:  BLINDER, ROBINSON &
COMPANY, INC.,

Debtor,

_____

SECURITIES INVESTOR
PROTECTION CORPORATION,
GLEN E. KELLER, JR.,

Appellants,

v.

CHRISTOS STELLATOS, OLINKA
PODANY, PAUL P. TAN,

Appellees.

No. 95-1473

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 93-K-213)

---

Submitted on the briefs:

Stephen P. Harbeck and Kevin H. Bell, Washington, D.C., for Appellant
Securities Investor Protection Corporation, and Andrew M. Low and Mark L.
Taylor, Davis, Graham & Stubbs LLP, Denver, Colorado, for Appellant Glen E.
Keller, Jr.

George Poulos, Astoria, New York, for Appellee Christos Stellatos, and Paul P.
Tan, pro se.

Before PORFILIO and LOGAN, Circuit Judges, and BURRAGE, District Judge.[*]

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

## Background

On July 31, 1990, Blinder, Robinson & Company, Inc. (debtor) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Immediately thereafter, the Securities Investor Protection Corporation (SIPC) applied to the United States District Court for the District of Colorado for protection under the Securities Investor Protection Act (SIPA), 15 U.S.C. §§ 78aaa-78lll. Pursuant to § 78eee(b)(3) of SIPA, the district court appointed Glen Keller (trustee) trustee for the liquidation of debtor and, pursuant to § 78eee(b)(4) of SIPA, removed the liquidation proceeding to the bankruptcy court.

---

[*] Honorable Michael Burrage, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

On August 8, 1990, the bankruptcy court entered an Order Approving And Adopting Trustee's Application. The order directed the trustee to effect publication of notice of the proceedings in twenty-six newspapers throughout the country on or before August 14, 1990, and to effect a mailing of notice to each person who appears from the debtor's records to have been a customer of the debtor with an open account within the past twelve months to the address of the person as it appears from the debtor's records, also by August 14, 1990. The order also approved the form and content of the notice and various other documents to be mailed in the claim package. In accordance with § 78fff-2(a),[2] the notice informed that claims must be filed within six months from the date of the notice and that no claims filed after that time would be allowed. The bar date by which claims had to be filed was February 14, 1991.

---

[2]    That statute provides in relevant part that

[n]o claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice [of the commencement of proceedings under SIPA] shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.

15 U.S.C. § 78fff-2(a)(3).

Christos Stellatos, Paul Tan, and Olinka Podany, were customers of the debtor with open accounts within twelve months of commencement of the proceedings. For various reasons, they all filed claims with the trustee after the bar date of February 14, 1991, and the trustee rejected each of their claims as untimely. The bankruptcy court held a hearing with respect to each of the three claimants, and it overruled the trustee's rejection of the claims and ordered that those three claims be treated in the same manner as timely-filed customer claims in the SIPA liquidation. The trustee and the SIPC[3] appealed to the district court. The district court affirmed the bankruptcy court decision, but on an entirely different basis. The trustee and the SIPC now appeal the district court's affirmance of the bankruptcy court's decision to this court. We exercise jurisdiction under 28 U.S.C. § 158(d),[4] and, for the reasons set forth herein, we must reverse.

---

[3]     SIPA provides that the "SIPC shall be deemed to be a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard . . . ." 15 U.S.C. § 78eee(d).

[4]     We note that the notice of appeal in this case was timely filed. The district court properly extended the time for filing a motion to reconsider pursuant to Fed. R. Bankr. P. 8015 and 9006(b)(1), which tolled the time for filing a notice of appeal.

Bankruptcy Court Order

In its Order Approving Certain Late-Filed Claims As Timely-Filed, entered on January 14, 1993, the bankruptcy court found the following facts. The trustee obtained a list of approximately 220,000 customers from the debtor's computer records, and he and his staff printed information from those computer records regarding those customers onto pressure-sensitive mailing labels. The mailing labels were then checked and shipped to a direct mail company in Pennsylvania. Customer claim packets containing notice, claim forms, and general information regarding the SIPA proceeding were printed, and those materials were also shipped to the direct mail company. The direct mail company affixed the mailing labels to the claim packets and stuffed them in window envelopes, checked for visibility of the mailing labels, affixed postage, and placed the envelopes in the United States mail for delivery no later than August 14, 1990. The bankruptcy court found that the trustee's mailing of the notice was reasonable under the circumstances.

The bankruptcy court specifically found that the trustee mailed notice to Olinka Podany, Paul Tan, and Christos Stellatos at the addresses that appeared for them in the debtor's records and that those mailings were not returned to the trustee's office. In addition, the court found that notice of the proceedings had

been published in twenty-six newspapers of general circulation throughout the country, including all editions of the Wall Street Journal.

Acknowledging that all three claimants denied actual receipt of notice, the bankruptcy court found specific facts with respect to all three claimants. The bankruptcy court's findings regarding the individual circumstances surrounding each of the three claimants' submission of untimely claims are fully set forth in the district court's opinion, see SIPC v. Stellatos (In re Blinder Robinson & Co., Inc.), 169 B.R. 704, 707-08 (D. Colo. 1994), and we will not repeat them here.

The bankruptcy court ultimately found that, despite the trustee's efforts in mailing notice to Ms. Podany, Mr. Tan, and Mr. Stellatos, and his publication of notice,

> these particular Claimants received no actual or constructive notice of the proceedings and that due process and concepts of fundamental fairness require allowance of late customer claims when a claimant has sufficiently and persuasively demonstrated that he had not received actual notice of the SIPA liquidation proceedings and the deadline for filing customer claims.

Bankr. Ct. Order at 8. The court emphasized that, despite having held hearings on many scores of untimely claims disputes where the trustee's determination was upheld and the customer claim was denied, these three particular claims "stand in sharp distinction from and involve unique circumstances distinguishing them from the other late customer claims to date." Id. at 9. The court found that, although the trustee's notice by mailing and publication was reasonable in light of the

-6-

sheer volume of customers, these three claimants had rebutted the presumption of actual receipt that mailing affords by direct and substantial evidence.

The bankruptcy court also found that none of the three claimants received constructive notice; it accepted their respective testimony that they did not read newspapers during the relevant time. The court concluded that, because Ms. Podany, Mr. Tan, and Mr. Stellatos did not actually receive notice of the liquidation proceeding, their claims should be treated as timely filed. The bankruptcy court held that literal application of SIPA to these three claimants would be unconstitutional. In other words, it held that SIPA is unconstitutional as applied to these three claimants.

District Court Order

The district court affirmed the bankruptcy court order that Ms. Podany, Mr. Tan, and Mr. Stellatos be treated as having timely-filed their claims, but it did so on an entirely different basis than the bankruptcy court. The district court did not address the legal analysis of the bankruptcy court regarding the due process violations and resulting constitutionality of SIPA as applied to the three claimants. Instead, it found clear error in the bankruptcy court's finding that the trustee mailed notice to Mr. Tan and Mr. Stellatos. Therefore, the district court concluded that Mr. Tan and Mr. Stellatos were deprived of the requisite notice under SIPA, and that published notice alone was insufficient to satisfy due

process requirements. As to Ms. Podany, it found that she fell within one of the statutory exceptions to the time-bar provision of SIPA.

Discussion

1. Factual Findings as to Mailing of Notice.

"In reviewing a district court's decision affirming the decision of a bankruptcy court, this court applies the same standards of review which governed the district court. The bankruptcy court's findings of fact will be rejected only if clearly erroneous." Tulsa Energy, Inc. v. KPL Prod. Co. (In re Tulsa Energy, Inc.), 111 F.3d 88, 89 (10th Cir. 1997) (quotation omitted).

> If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). Thus, the factual findings need not be correct, see Bill's Coal Co., Inc. v. Board of Pub. Utils., 887 F.2d 242, 244 (10th Cir. 1989), but we must uphold them if they fall within the range of permissible conclusions, see Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400 (1990).

After taking testimony in three separate hearings for these three claimants and receiving much documentary evidence in those and other hearings, as well asreceiving testimony from the trustee, the bankruptcy court stated:

This Court is convinced that Ms. Podany, Mr. Tan, and Mr. Stellatos . . . were mailed a customer claim packet containing the Notice and a customer claim form on or before August 14, 1990. In addition, it is uncontroverted that Keller published notice in 26 newspapers of general circulation throughout the United States, including all editions of the Wall Street Journal.

Bankr. Ct. Order at 8. It also stated:

This Court is cognizant of Mr. Stellatos' arguments regarding the alleged inconsistencies in and inadequacy of Keller's proof of mailing. This Court is convinced, however, that the proof is sufficient and that the customer claim packets, totaling 221,242, were, at least, placed into the custody and control of the United States Postal Service. The ultimate outcome of the articles' intended journey throughout the world is much more uncertain.

Id. at 7 n.6.

Our review of the record reveals that the bankruptcy court's conclusion that the trustee mailed notice to these three claimants on or before August 14, 1990, is both logical and reasonable. See Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.), 798 F.2d 396, 400 (10th Cir. 1986). Further, considering the entire evidence, we are not left with "the definite and firm conviction that a mistake has been committed." Exxon Corp. v. Gann, 21 F.3d 1002, 1005 (10th Cir. 1994) (quotation omitted). At the very least, it is certainly within the range of possible conclusions in light of the entire record. Therefore, we must reverse the district court's holding of clear error in the bankruptcy court's finding that notice was mailed to these three claimants.

With regard to the district court's specific concerns with what it perceived as a lack of proof that the trustee mailed notice in August of 1990 to Mr. Tan and Mr. Stellatos, we note the following. The trustee testified on December 3, 1991, that the mailing list was obtained from the debtor's computer records and that the exact same information printed out for that list was printed a second time onto pressure-sensitive mailing labels. App. at 1004.

The district court was also concerned that the two affidavits identifying Mr. Tan and Mr. Stellatos's names as being on the mailing list referred to the certificate of mailing filed with the bankruptcy court dated March 6, 1991, and made no reference to the August 14, 1990 mailing list. It is true that the certificate of mailing dated March 6, 1991 is less clear than it could be regarding its tie-in to the August 14, 1990 mailing list. Considering the entire record, however, it is clear (or, at the very least, a permissible conclusion) that the certificate of mailing dated March 6, 1991 was intended as evidence of the August 14, 1990 mailing to the list of customers obtained from the debtor's computer records. The August 14, 1990 mailing list was too voluminous to file with the bankruptcy court because it filled several boxes, so, by order of the bankruptcy court, the mailing list was kept at the offices of the trustee's legal counsel. Sometime after the initial August 14, 1990 mailing, it became apparent that something needed to be on file with the bankruptcy court regarding the

mailing. Consequently, on March 6, 1991, the trustee executed a certificate of mailing indicating that he caused the notice materials to be mailed on the dates indicated in the Affidavit of Mailing[5] attached thereto to customers of the debtor. He went on to state that the mailing list of customers would be kept at the trustee's law firm, and would be available for review upon proper notice. App. at 431.

Finally, it is evident from the record that supplemental mailings were effected after the initial August 14, 1990 mailing. The district court found that troublesome because it held that the record was not clear that Mr. Tan and Mr. Stellatos were not included in those mailings, as opposed to the August 14, 1990 mailing. Our review of the record shows that the supplemental mailings had date-specific certificates of mailing attached to them, and the record contains copies of the customer lists for those mailings. Neither Mr. Tan nor Mr. Stellatos appears on any of those supplemental mailing lists. The existence of supplemental mailings does not render clearly erroneous the bankruptcy court's finding that Mr. Tan and Mr. Stellatos were mailed notice in the initial August 14, 1990 mailing.

---

[5] The district court questioned the admissibility of the Affidavit of Mailing by Joanne Walzl referred to in the certificate of mailing. We need not reach the issue, however, because our reading of the record would support the bankruptcy court's factual findings even without considering the Walzl affidavit.

2. Due Process.

The bankruptcy court found that these three claimants' due process rights were violated because they did not actually receive the notice mailed by the trustee. The district court did not address that legal issue, because it affirmed on a different basis. Because this is a purely legal issue, we see no need to prolong this case by remanding it to the district court for further consideration in light of our holding that the bankruptcy court's finding as to mailing was not clearly erroneous. Thus, we will address the due process issue.

The Supreme Court held in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. "The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." Id. at 315. The Court held that, in that case, publication of notice was insufficient to afford due process to individuals whose addresses were known. Because the names and addresses were known to the trustee in that case, due process required notice "at least by ordinary mail to the record addresses." Id. at 318. Relying on Mullane, this court has held

-12-

that, when the name and address of an interested party is known, due process requires notice "'by mail or other means as certain to ensure actual notice.' Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800, 103 S. Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). But due process does not require that the interested party actually receive the notice." United States v. Clark, 84 F.3d 378, 380 (10th Cir. 1996); see also United States v. 51 Pieces of Real Property, 17 F.3d 1306, 1316 (10th Cir. 1994) ("Due process does not require, however, that the interested party actually receive notice."); Weigner v. City of New York, 852 F.2d 646, 649, 652 (2d Cir. 1988) (holding that due process does not require actual receipt of notice mailed; "Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable.").

We are satisfied that the trustee's actions of mailing notice to the customers and publishing notice in newspapers of general circulation were reasonable. These two methods of notice, in combination, were reasonably calculated to apprise interested parties of the SIPA liquidation and afford them an opportunity to be heard.[6] Thus, the trustee's actions satisfied due process requirements.

3. SIPA requirements.

---

[6] We note that the bankruptcy court found that the trustee's actions in mailing notice to the customers and publishing notice in newspapers of general circulation were reasonable. Bankr. Ct. Order at 9-10.

The six-month time-bar contained in § 78fff-2(a)(3) of SIPA is mandatory and absolute. See Camp v. Morey (In re Gov't Secs. Corp.), 107 B.R. 1012, 1022 (S.D. Fla. 1989) ("time limits [under SIPA] for filing claims are mandatory and may not be extended by the exercise of some equity power."); Miller v. Austin, 72 B.R. 893, 894, 896-98 (S.D.N.Y. 1987); Redington v. Borghi (In re Weis Secs.), 411 F. Supp. 194, 195 (S.D.N.Y. 1975) (denying late-filed claim despite lack of actual receipt of mailed notice), aff'd without opinion, 538 F.2d 317 (2d Cir. 1976); SEC v. J. Shapiro Co. (In re Secs. Investor Protection Corp.), 414 F.Supp. 679, 680, 683 (D. Minn. 1975) (holding time-bar mandatory and actual receipt of notice immaterial); SEC v. Kenneth Bove & Co., Inc., 353 F.Supp 496, 497 (S.D.N.Y. 1973) (six-month time period is "absolute outer limit"); In re Adler, Coleman Clearing Corp., 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997); In re OTC Net, Inc., 34 B.R. 658, 660-61 (Bankr. D. Colo. 1983) (§ 78fff-2(a)(3) provides a strict statute of limitations and is an absolute bar to untimely claims).

The only exception relevant here to the mandatory application of the six-month time-bar is when an incompetent person without a guardian may apply, *within the six-month period*, for an extension upon cause shown.  See 15 U.S.C. § 78fff-2(a)(3).  Ms. Podany's hardships caused by the automobile accident in which she was involved are unfortunate, but the fact remains that she was required to apply for an extension within the six-month time period to file her claim.  See Camp v. Morey (In re Gov't Secs. Corp.), 107 B.R. 1012, 1022 (S.D. Fla. 1989); Camp v. Carson (In re Gov't Secs. Corp.), 95 B.R. 829, 832, 833 (S.D. Fla. 1988).  She made no such application,[7] and, therefore, her untimely claim does not fall within the exception to the mandatory and absolute time-bar.  The district court's holding that she fell within the exception because, had she made such an application for extension, it would have been granted, is contrary to the plain language of the statute.

## Conclusion

The bankruptcy court's finding that the trustee mailed notice to Mr. Tan, Mr. Stellatos, and Ms. Podany on or before August 14, 1990 was not clearly

---

[7]    We note that the record contains evidence to indicate that Ms. Podany was not "incompetent" throughout the entire six-month period.  There was a period of time, within the six-month period, that she returned to work, and her testimony indicated that her failure to discover the notice before expiration of the six-month period may have been partially due to her own lack of diligence.  App. at 1019, 1020-21.

-15-

erroneous. The record contains sufficient evidence to support that conclusion. Further, the district court's holding that Ms. Podany's late-filed claim fell within the exception for incompetent persons without guardians was erroneous. The six-month limitations period in SIPA is mandatory and absolute, and none of the three late-filed claims in this case falls within the very limited statutory exceptions.

Finally, the trustee's actions of mailing notice to the three claimants, combined with publishing the notice in newspapers of general circulation, satisfied the constitutional requirements of due process. The bankruptcy court's conclusion to the contrary was error.

The judgment of the United States District Court for the District of Colorado is REVERSED and the case is REMANDED to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.