**In the Matter of SIEBAN & BYRNES, INC., Bankrupt.**

**No. 66–B–335.**

United States District Court
S. D. New York.

Aug. 5, 1968.

Morris J. Kaplan, New York City, petitioner for 9 claimants and Local 202, I.B.T.

Sahn, Shapiro & Epstein, New York City, for Trustee.

## MEMORANDUM

BONSAL, District Judge.

Petitioner, on behalf of nine claimant-creditors, former employees of Sieban & Byrnes, Inc. (the bankrupt), has petitioned pursuant to § 39(c) of the Bankruptcy Act (the Act), 11 U.S.C. § 67(c), for review of an order of the Referee denying petitioner's application to file the nine proofs of claim *nunc pro tunc*.

The nine claimants are members of Local 202, International Brotherhood of Teamsters (the Union) and, until April 29, 1966, were employees of the bankrupt, with which the Union had a collective bargaining agreement. On April 29, 1966, the bankrupt discharged its employees and executed a general assignment for the benefit of creditors.

On May 5, 1966, an involuntary petition in bankruptcy was filed against the bankrupt and it was adjudicated a bankrupt on May 24, 1966.

On May 11, 1966, the bankrupt filed with the Referee a schedule of debts and a list of its unsecured creditors and of creditors having priority under the Act (the bankrupt's list).

On May 19, 1966, a proof of claim for wages due filed by claimant Harley (one of the nine) was returned by the Referee's office for the reason that there had as yet been no adjudication.

On May 23, 1966 (prior to adjudication), petitioner wrote a letter to the bankrupt on behalf of the Union and its members who were former employees (the nine claimants) demanding payment of wages due and enclosing a list of the nine employees with their names and addresses. Petitioner states that at the time he wrote the letter, neither he nor the officers of the Union nor the employees were aware of the filing of the involuntary petition in bankruptcy of May 5, 1966, and that they knew only that there had been an assignment for the benefit of creditors on April 29,

1966. Petitioner states that no answer was received to his letter.

On June 6, 1966, the attorney for the petitioning creditors filed with the Referee a list of creditors (the creditors' list). The creditors' list did not contain the names of any of the nine claimants, but listed the Union Welfare and Pension Funds as unsecured creditors. The bankrupt's list, on the other hand, listed 11 priority creditors (including six of the nine claimants, stating that their addresses were unknown) and the Union Welfare Fund and the Union Pension Fund.

On June 9, 1966, notice of the first meeting of creditors was sent to all persons appearing on the creditors' list, which did not include the nine claimants but only the Union Welfare and Pension Funds.

On June 15, 1966, claimant Harley again filed a proof of claim for wages due. The Trustee filed, and subsequently withdrew, his objection to Harley's claim in the amount of $81.75.

On June 21, 1966, the first meeting of creditors was held in accordance with the notice sent to the persons appearing on the creditors' list. Except for Harley, the nine claimants did not file proofs of claim within the six months period prescribed in § 57n of the Act. (11 U.S.C. § 93(n))

It appears that petitioner did not learn of the filing of the involuntary petition in bankruptcy, nor of the bankrupt's adjudication, until February 28, 1967. There followed a delay, due to the petitioner's illness, and, on March 15, 1968, petitioner wrote to the Referee explaining the reasons for the failure of the claimants to file proofs of claim.

On May 7, 1968, petitioner moved before the Referee for permission to file the claims *nunc pro tunc*. A hearing was held on May 15, 1968, and on June 4, 1968 the Referee denied petitioner's motion. The Referee found that a notice was sent to all persons on the creditors' list, that the Union Welfare and Pension Funds were on the list, that the

Union was located at 90 West Broadway, New York City, being the same address given for the Union Welfare and Pension Funds, and that one of the claimants, Harley, had filed a proof of claim on May 19, 1966 and again on June 15, 1966. The Referee concluded that "the Union had notice of the petition in bankruptcy since at least one of the employees had filed a proof of claim," and finding that the other claims had not been filed within six months following the first meeting of creditors as required by § 57n of the Act, the Referee denied petitioner's motion to file these claims *nunc pro tunc*.

Concededly, no notice of the creditors' meeting was sent to the claimants, nor to the Union. The Notices to the Union Welfare and Pension Funds were not notice to the Union. The former are administered by trustees who are representatives of the employer and the employees. The Welfare and Pension Funds were not agents of the Union or of its members for the purpose of receiving notices to creditors. The fact that claimant Harley filed a proof of claim does not establish that either the Union or the other claimants were aware of the bankruptcy proceedings.

The question presented is whether, absent notice to the claimants of the first meeting of creditors, the bankruptcy court has the power to extend the time for claimants to file their proofs of claim beyond the statutory six months period provided in § 57n of the Act. The Referee held that the bankruptcy court lacked such power. Counsel for the Trustee in Bankruptcy has filed a statement in this review proceeding, stating that he did not contest the facts set forth in the moving papers before the Referee and that, in the belief that the claimants had not received notice, he had consented before the Referee to the entry of an order that the claims of the claimants be received and filed *nunc pro tunc*, notwithstanding his view that there is no power in the bankruptcy court to extend the six months period provided in § 57n of the Act.

Numerous cases support the holding of the Referee that the bankruptcy court cannot extend the time for filing claims. See, e.g., Fortner and Perrin, Inc. v. Smith, 327 F.2d 801 (9th Cir. 1964); In re Mellen Mfg. Co., 287 F.2d 37 (3d Cir.), cert. denied, 366 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254 (1961); Avidon v. Halpert, 145 F.2d 884 (2d Cir. 1944); In re Paragon Novelty Bag Co., 135 F.2d 210 (2d Cir. 1943).

On the other hand, as long ago as 1939 the Supreme Court held that the bankruptcy courts have equitable powers to pass on a wide range of problems arising out of the administration of bankrupt estates, and stated:

> "And even though the act provides that claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication, the bankruptcy court in the exercise of its equitable jurisdiction has power to permit claims to be proved thereafter in order to prevent a fraud or an injustice. Williams v. Rice, 30 F.2d 814; In re Pierson, 174 F. 160; Larson v. First State Bank, 21 F.2d 936; Burton Coal Co. v. Franklin Coal Co., 67 F.2d 796." Pepper v. Litton, 308 U.S. 295, 305 n. 11, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

The existence of such equitable powers was recently reiterated in a different context by the Court of Appeals, In the Matter of Miracle Mart, Inc., 396 F.2d 62 (2d Cir. 1968).

The claimants here were employees of the bankrupt entitled to priority under the Act. They received no notice of the first creditors' meeting, are not expected to know the intricacies of the bankruptcy statutes, nor should they be faulted for the inexcusable delay of the petitioner in bringing their claims to the attention of the bankruptcy court in the circumstances here presented. Finally, it does not appear that their claims will be substantial from the point of view of the bankrupt estate although they are doubtless substantial from the point of view of the

claimants. For these reasons, to deny them the right to prove their claim because the six months statutory period has elapsed would work a manifest injustice to them. The bankruptcy court has the equitable power to correct this injustice. In doing so, it need not depart from the well established principle that, except in the most unusual cases, such as this one, the equitable power should not be used to extend the statutory six months period fixed by Congress.

The order of the Referee is set aside and the matter is remanded to the Referee for the purpose of permitting the filing and proving of the claims *nunc pro tunc* (with the exception of Harley, who has already filed his claim) so that they may be acted upon as if they had been filed within the six months statutory period.

It is so ordered.