Harvey R. MILLER, As Trustee for the liquidation of John Muir & Co., Debtor, Appellant,

v.

Nancy L. AUSTIN, Appellee.

In re JOHN MUIR & CO., Debtor.

Theodore H. FOCHT, As General Counsel for Securities Investor Protection Corp., Appellant,

v.

Nancy L. AUSTIN, Appellee.

In re JOHN MUIR & CO., Debtor.

Nos. 85 Civ. 3580 (CHT), 85 Civ. 3581 (CHT).

United States District Court, S.D. New York.

April 27, 1987.

See also, Bkrtcy., 28 B.R. 946, Bkrtcy., 51 B.R. 150.

---

Weil, Gotshal & Manges, New York City, for appellant Harvey R. Miller; Richard P. Krasnow, Jeffrey L. Tanenbaum, Lori R. Fife, George G. Love, II, of counsel.

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D.C., for appellant Theodore H. Focht; Michael E. Don, Deputy Gen. Counsel, Stephen P. Harbeck, Associate Gen. Counsel, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for appellee Nancy L. Austin; Julie D. Fay, of counsel.

## OPINION

TENNEY, District Judge.

This is an appeal from an order of the bankruptcy court (Howard C. Buschman III, J.) dated March 28, 1985 allowing Nancy L. Austin's customer claim against John Muir & Co. ("Debtor" or "Muir"), a securities brokerage firm which closed down in August 1981. Acting on the application of the Securities Investor Protection Corporation ("SIPC"), the district court (Sofaer, J.) entered a decree dated August 17, 1981 stating that the customers of Muir were in need of the protections afforded by the Securities Investor Protection Act of 1970, as amended ("the Act" or "SIPA"), codified at 15 U.S.C. § 78aaa *et seq.* (1981). Harvey R. Miller ("the trustee") was thereafter appointed by the court to handle Muir's liquidation. The trustee set a deadline of November 9, 1981, subsequently extended to March 9, 1982 ("the bar date"), by which time customers and creditors of Muir were required to file claims, and published and mailed to them a notice dated September 8, 1981 explaining procedures and time limits and enclosing appropriate forms for filing claims.

On September 9, 1982, some six months after the bar date had passed, Austin filed a claim for $115,235.50, the net equity value of securities held in her account at Muir. The trustee disallowed Austin's claim on the ground that it had been untimely filed. The trustee and SIPC then moved for an order from the bankruptcy court confirming the propriety of disallowing Austin's claim. Austin moved for an order allowing it. A hearing concerning Austin's objection to the disallowance of her claim was held on October 4, 1984 and in a decision dated March 20, 1985 the bankruptcy court allowed Austin's late claim. SIPC and the trustee appeal from that decision.

The court concludes that the bankruptcy court erred as a matter of law in granting an equitable exception to the time limits established for filing claims. Accordingly, the decision of the bankruptcy court is reversed.

## BACKGROUND

The facts concerning the filing of Austin's claim are, for the most part, undisputed. Austin is a housewife who placed nearly all her assets (with the exception of the home belonging to her and her husband) into a margin account at Muir. George James, a customer representative employed by Muir, was vested with responsibility for, and had discretion with respect to, trading the securities in Austin's account. On August 17, 1981, SIPC, a nonprofit corporation established pursuant to SIPA, filed for a protective decree on behalf of the customers of Muir.

Austin concedes that she received in due course the trustee's official notice to customers dated September 8, 1981 ("notice"), which stated in pertinent part:

If you are a customer of the Debtor with a valid claim relating to securities or cash you may be protected under the provisions of SIPA.

In order to expedite the liquidation process, the Trustee and [SIPC] are attempting to reach agreements with other stock brokerage firms to accept a transfer of the accounts of the Debtor's customers. The Trustee and SIPC believe that any such transfer of accounts will effect the return of your securities to your control as quickly and efficiently as possible.

\* \* \* \* \* \*

IN ORDER TO FULLY PROTECT YOUR RIGHTS YOU MUST FILE A CLAIM WITH THE TRUSTEE EVEN IF YOUR ACCOUNT IS TRANSFERRED.

Enclosed is a form which should be completed by you and mailed to the Trustee in the enclosed envelope. A second copy is for your files. THE CLAIM MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE THE DATE SPECIFIED ON THE CLAIM FORM. While your claim is being processed, you may be requested to file with the Trustee additional information or supporting documents.

You are advised that it is your responsibility to accurately report all securities positions and money balances in connection with your account with the Debtor. An improper claim or retention of property to which you are not entitled may make you liable for criminal penalties under SIPA.

\*　\*　\*　\*　\*　\*

Your cooperation in returning your completed form promptly is in your best interests and will facilitate our delivery of any securities and cash to which you are entitled under SIPA. If you have any questions please write to the Trustee; telephone calls will only slow distribution to all customers.

A customer claim form enclosed with the notice stated that "ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE November 9, 1981." The deadline for receipt of claims was subsequently changed to March 9, 1982 ("the bar date"), although it appears that Austin was never notified that the period of time in which to file claims had been extended. Transcript of Hearing ("Tr.") 34–35.

Austin did not file her customer claim form until September 14, 1982. The form she filed listed the securities held in her Muir account as of July 31, 1981. Attached was a copy of her July 31, 1981 account statement and a memorandum from James indicating position changes in the account from July 31 to August 20, 1981.

On June 15, 1983, the trustee disallowed Austin's claim because she had filed it af-ter the bar date. Austin objected to the trustee's disallowance of her claim. The bankruptcy court held a hearing concerning the objection.

At that hearing Austin testified that she had understood from the notice that she was required to file a claim within a designated period of time, but had failed to file for several reasons. First, she contended she was unable to file a *proper* claim form because Muir and/or the trustee had failed to send her a current statement of her account as of the date of the notice, and she feared that filing an improper claim would subject her to penalties. The last statement Austin had received reflecting the positions in her account was dated July 31, 1981. It is undisputed that she did not receive a confirmation of trades made in the account between July 31 and September 8, 1981 until well after the deadline for filing.

In addition, Austin asserted that she failed to file a timely claim form in reliance on James' advice. She testified that when she asked James to provide her with information concerning recent trades in her account so she could file a proper claim form, he advised her that her account was being transferred to another brokerage house, and it was therefore unnecessary for her to file a claim form. James' testimony confirmed that he had related this incorrect information to Austin. Tr. 51.

While Austin cited the transmission of misinformation by James, admittedly after consulting with the trustee's representative at Muir, as evidence that the trustee was negligent in failing to properly instruct the Muir brokers, she never wrote to James or the trustee for confirmation. Instead, she and her husband repeatedly telephoned James to inquire on the status of her account, and he mistakenly assured them that it was being taken care of.

Although other Austin family members had had their accounts transferred to another brokerage house, Nancy Austin's account was never so transferred.[1] In Au-

---

**1.** The bankruptcy court found as a fact that Austin's account was transferred at a later date. 81 B 11761, slip op. at 4. As there is no support in the record for this finding of fact, it is clearly erroneous. However, this error is of no consequence since the question of whether Austin's account was transferred is immaterial to the court's decision to reverse.

gust or September 1982, James told Austin's husband that Austin should attempt to file a late claim form, and that there was a possibility that the trustee was going to disallow the claim. Tr. 45.

### Disposition Below

In its decision allowing Austin's claim, the bankruptcy court acknowledged the undisputed evidence that Austin (i) timely received notice of SIPA's six-month time limit for filing customer claims, 15 U.S.C. § 78fff–2(a)(3) (1981), and (ii) filed an untimely claim. However, the bankruptcy court held that equitable exceptions to the time limits can be recognized when SIPA's underlying policies are not harmed by allowance of late claims.

The bankruptcy court concluded that Austin's claim should be allowed because it would not undermine SIPA's policies. Reasoning in support of this conclusion, the bankruptcy court specifically (i) noted the absence of any evidence that Austin had purposely delayed filing a claim to avail herself of an advantageous change in the market, 81 B 11761, slip op. at 6 (Bankr.S.D.N.Y. March 20, 1985); (ii) observed that the Muir estate was solvent after satisfying all timely filed customer claims and that SIPC had been fully reimbursed for its outlays, *id.* at 6, 8; and (iii) emphasized that Austin possessed a "concededly meritorious" claim relating to property that was "rightfully hers," *id.* at 8, 14.

The bankruptcy court's decision in effect held that the bar date of § 78fff–2(a)(3) should be immutable for limited, insolvent estates, but in the instance of estates remaining solvent after satisfaction of timely customer claims, untimely customer claims should be allowed on an equitable basis in order to achieve the overall purpose of SIPA "to maintain confidence in the securities markets by providing customers of securities broker-dealers protection against losses which might occur as a result of the financial failure of broker-dealers." *Id.* at 8. Such an exception allows tardily filed customer claims to be satisfied prior to timely filed general creditor claims.

SIPC and the Trustee argue that the statutory bar date should be immutable and the bankruptcy court's decision should therefore be reversed.

### DISCUSSION

When the parties challenge a bankruptcy court's conclusions, the district court on appeal is entitled to independently determine the applicable law, and to reach its own conclusions of law. *In re Tesmetges,* 47 B.R. 385 (E.D.N.Y.1984); *In re Penn-Dixie Industries, Inc.,* 9 B.R. 936 (S.D.N.Y. 1981).

Section 78fff(b) of SIPA specifies that the provisions of the Bankruptcy Code shall apply in SIPA liquidation proceedings, to the extent that they are consistent with SIPA. 15 U.S.C. § 78fff(b) (1981). The bankruptcy court supported its decision to create an equitable exception to allow Austin's claim by citing SIPA and its legislative history, the Bankruptcy Code and Rules, and applicable case law. None of these sources, however, justifies the bankruptcy court's decision.

### 1. *Applicable Statutes and Rules*

The bankruptcy court correctly noted that the current version of § 78fff–2(a)(3), enacted in 1978 amendments to SIPA ("the statute"), contains a six-month time limit for filing customer claims. The section states:

> Time limitations—No claim of a customer or other creditor of the debtor which is received by the Trustee after the expiration of the six-month period beginning on the date of publication of notice ... shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.

15 U.S.C. § 78fff–2(a)(3) (1981).

Thus, it is clear from the face of the statute that the six-month time limit for filing is subject to extension at the discre-

tion of the court in only three specified instances. Further emphasis is contained in the legislative history of the provision. The Section-by-Section Summary of the SIPA Amendments of 1977 states:

> Claims of customers ... must actually be received by the trustee within a six-month period from the date of publication of notice.... Claims filed more than six months after publication would be barred except for certain claims by a government authority, an infant or an incompetent....

Report of the Senate Committee on Banking, Housing and Urban Affairs, No. 95–763, 95th Cong., 1st Sess. at 12; 3 U.S.Code Cong. & Admin.News 764, 775 (1978).

Further, nothing in the present Bankruptcy Code provides for an express exception to the six-month time limit. It is true that the time limits for filing under SIPA formerly were phrased as "those provided in § 57n of the Bankruptcy Act," 11 U.S.C. § 93(n) (repealed), and that equitable exceptions were recognized by some courts. However, § 78fff–2(a)(3) has been amended to delete the reference to § 57(n) of the former Bankruptcy Act, and in its place, incorporate time limits directly into SIPA. Thus, even if the Bankruptcy Code presently provided for an express exception to the time limits for filing, the provision would not be applicable to SIPC liquidations since it would contradict the clear words of SIPA § 78fff–2(a)(3). *See* 15 U.S.C. § 78fff(b).

Finally, it should be noted that the present Bankruptcy Rules do not provide for an exception to the six-month time limit. Quite the opposite, the applicable Bankruptcy Rule supplementing § 78fff–2(a)(3) of SIPA, Rule 3002(c), provides for a normal filing period even shorter than the six-month period specified in SIPA. Rule 3002(c) states: "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors...." Bankr. Rule 3002(c), 11 U.S.C.A. (1984). Rule 9006(b) limits enlargement of the time to file claims "to the extent and under the conditions stated" in Rule 3002(c). Bankr.

Rule 9006(b), 11 U.S.C.A. (1984). None of those conditions are applicable here, as the bankruptcy court noted. Thus, no enlargement of the time limits is permissible.

### 2. *Applicable Case Law*

■ The bankruptcy court acknowledged that the current statutes and rules and their legislative history do not allow equitable exceptions to SIPA's time limits. However, it relied upon two cases which supposedly support recognition of an equitable exception to the time bar. As discussed below, the bankruptcy court erred in relying principally on these precedents, as they provide insufficient support for its decision.

First, the bankruptcy court erroneously construed the statement of the court in *Securities and Exch. Comm'n v. Kenneth Bove & Co.*, 353 F.Supp. 496, 497 (S.D.N.Y. 1973), that there may be particular instances when late claims may be allowed. *Bove* recognizes that the six-month time limit is the "absolute outer limit" for filing SIPA claims, and the shorter filing period specified by Rule 3002(c)[2] is the normal filing period. *Id. Bove* stands for the proposition that a court may authorize payment of a claim filed after the shorter, normal filing period has expired, where it is proved that the claim is meritorious and the delay is excusable. The dictum in the opinion does not, as the bankruptcy court believed, sanction an "excusable neglect" exception to the six-month "absolute outer limit" for filing claims.

Second, the bankruptcy court cited its own opinion in a prior phase of this proceeding, *In re Muir & Co.*, 81 B 11761 (Bankr.S.D.N.Y. July 11, 1984). In that opinion, the bankruptcy court indicated that it was "loathe categorically to state that fraud or other reasons for tolling the period should never apply," *id.*, slip op. at 2, but denied the motion for leave to file a late proof of claim. Thus, the quoted statement is dictum and insufficient support for establishing an equitable exception.

---

**2.** At the time of the *Bove* opinion, the normal filing period was specified in 15 U.S.C. § 78fff(e).

The bankruptcy Court also misconstrued *In re Weis Sec., Inc.*, 411 F.Supp. 194 (S.D. N.Y.1975), *aff'd without opinion*, 538 F.2d 317 (2d Cir.1976), which established the rule in this jurisdiction that late customer claims may not be allowed if the claimants have received actual or constructive notice of the liquidation proceedings. 411 F.Supp. at 195. The bankruptcy court apparently believed that this rule should not apply in Austin's case because she had raised equitable considerations other than lack of notice.

Such an interpretation disregards the broad scope of the issue addressed in *Weis:* "whether there is discretion to permit a late filing of a claim," *id.*, at 194. It also disregards the subsequent decision in the *Weis* matter which broadly addressed "the extent, if any, of this court's power to extend the time for filing under SIPA and the Bankruptcy Act so that an out of time claim may be held timely." 1 Bankr.Ct. Dec. 1572, 1573 (S.D.N.Y. October 30, 1975). Citing *Bove* as authority, the latter decision held that the six-month statutory time bar is an inflexible outer limit that may not be extended by the exercise of judicial equity power, where Congress' plain words mandate otherwise. *Id.* at 1573.

Instead of following the clear, although harsh rule established in *Weis*, the bankruptcy court cited the dictum in *Bove* and *Muir* and relied on the policies of SIPA to add weight to its conclusion. It implied that if SIPC is not prejudiced by allowing a late claim against a solvent estate, time limits can be interpreted flexibly by the courts. As will be discussed below, it erroneously relied on the policies underlying SIPA to support its decision.

### 3. *Erroneous Recognition of "Manifest Injustice" Exception*

■ The bankruptcy court recognized that SIPA now contains its own time limits, rather than referring to § 57(n) of the former Bankruptcy Act for that purpose. It nonetheless cited case law construing § 57(n) and approving of the bankruptcy court's "exercise of its equitable jurisdiction ... to permit [late] claims to be proved ... in order to prevent a fraud or injustice," *id.* at 9, quoting *Pepper v. Litton*

308 U.S. 295, 305 n. 11, 60 S.Ct. 238, 244 n. 11, 84 L.Ed. 281 (1939), and held that such precedent is analogously applicable to SIPC liquidations.

The bankruptcy court faulted the trustee for failing to give Austin a statement concerning the positions in her account, contrary to his duty under 11 U.S.C. § 704(7) (Supp.1987) to provide information requested by parties in interest, 81 B 11761 slip op. at 11, 14, and for failing to properly inform the Muir brokers, on the assumption that proper guidance could have prevented the relaying of misinformation to unsophisticated customers like Austin, *id.* The bankruptcy court concluded from all of this that "it would be manifestly unjust not to recognize [Austin's] claim." *Id.* at 14.

This holding is erroneous because it disregards the long-established rule that "except in the most unusual cases ... the equitable power should not be used to extend the statutory six months period fixed by Congress." *In re Elec. Computer Programming Inst. of Fresno, Inc.*, 16 C.B.C. 236, 238 (Bankr.S.D.N.Y.1978), quoting *Sieban & Byrnes, Inc.*, 291 F.Supp. 315, 317 (S.D.N.Y.1968).

In prior cases, none of which arose under SIPA, courts have allowed the time period for filing to be extended in only two circumstances: (i) where the claimant received inadequate notice; and (ii) where an officer of the bankruptcy court committed an error relied upon by the claimant. The cases cited by the bankruptcy court can easily be fitted into these two categories.

In *Fresno* and *Sieban* late claims were allowed because of a failure of notice to unsophisticated claimants. *In re Miller*, 485 F.2d 74 (5th Cir.1973), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974), *In re Comac Co.*, 402 F.Supp. 43 (E.D.Mich.1975), and *In re Bender Body Co.*, 47 F.Supp. 867 (N.D.Ohio 1942), allowed late claims because mistakes by officers of the bankruptcy court induced the late filings. These were exceptional circumstances, distinguishable from the present case.

The trustee's failure to properly inform the Muir brokers cannot be characterized as a mistake by an officer of the court which indirectly induced Austin to delay filing her claim. It is true that James misinformed Austin and the trustee failed to send her a statement confirming recent trades in her account. However, in a SIPC liquidation, these types of occurrences can be expected. The court-approved notice advised claimants to communicate in writing with the trustee. Austin admits she received a copy of the notice in time to have inquired about filing a claim. Because she chose to disregard the clear advice provided in the notice, this court concludes that it would not be "manifestly unjust not to recognize her claim."

### 4. *Erroneous Recognition of* *"Excusable Neglect"* *Exception*

■ The bankruptcy court recognized that the "excusable neglect" exception contained in Former Bankruptcy Rule of Procedure 906 (presently incorporated in Rule 9006(b)(1) of the Bankruptcy Rules) is inapplicable to SIPC liquidations. The applicable provision of the current Bankruptcy Rules is Rule 9006(b)(3), which allows a court to enlarge the time to file a claim in a SIPC liquidation only under the circumstances specified in Rule 3002(c). Bankr. Rule 9006(b)(3), 11 U.S.C.A. (1984). The bankruptcy court also recognized that none of the circumstances permitting enlargement are applicable here. 81 B 11761, slip op. at 11–12.

However, the bankruptcy court construed *Bove* to support the application of an "excusable neglect" exception and also noted SIPC's concession at the hearing that "if it were incorrect in its assertion that [the time limits are] immutable," *id.* at 12, "at the very least we would be dealing with an excusable neglect standard." Tr. 15.

As indicated above, the dictum in *Bove* does not recognize an "excusable neglect" exception. Even if this court were prepared to acknowledge that equitable exceptions to SIPC's time limits are allowable in this jurisdiction, it would follow the long-established rule that "[i]t is generally improvident to grant permission to file late

proofs of claim," *In re O.P.M. Leasing Serv., Inc.*, 48 B.R. 824, 831 (S.D.N.Y. 1985), and that exercise of the equitable power should be reserved for the most unusual cases. *See Fresno*, 16 C.B.C. 236, 238 (Bankr.S.D.N.Y.1978); *Sieban*, 291 F.Supp. 315, 317 (S.D.N.Y.1968).

The court holds that "excusable neglect" is not present here. "Excusable neglect is present when a party fails to meet an obligation due to 'unique or extraordinary' circumstances ... 'beyond the reasonable control' of the delinquent party." *O.P.M.*, 48 B.R. at 830. The factors relevant to the "excusable neglect" determination are (i) adequacy of notice to the creditor; (ii) source of the delay in filing; and (iii) whether there is prejudice to the debtor. *Id.* at 831.

First of all, the court notes that Austin unquestionably received adequate and timely notice and her own unreasonable conduct was a source of the delay in filing. The court disagrees with the bankruptcy court's finding that Austin "acted diligently upon receiving the Notice" and "pursued [her rights] as best she was able," 81 B 11761, slip op. at 12, 14. Rather, this court finds that she acted unreasonably in relying on James' advice, since it directly contradicted the clear language of the notice, which emphasized that "IN ORDER TO FULLY PROTECT YOUR RIGHTS YOU MUST FILE A CLAIM WITH THE TRUSTEE EVEN IF YOUR ACCOUNT IS TRANSFERRED."

Furthermore, Austin disregarded the portion of the notice that advised customers with questions to communicate in writing with the trustee. It is true that lack of information was beyond her control, but it was not beyond her reasonable control to file a contingent claim form indicating that she had not received full information with which to properly complete it. She failed to do this. The court cannot, out of sympathy, countenance such unreasonable conduct by a claimant, even if it results in forfeiture of property that is "rightfully hers."

Had Austin not received notice of the procedures for protecting her property, it

would admittedly be more difficult to justify such a conclusion. But the court will not, under circumstances where a claimant had clear notice of the time limits, strain to reach an equitable result that is contrary to the clear language of SIPA.

Furthermore, the court disagrees with the bankruptcy court's conclusions that allowance of Austin's late claim would not prejudice Muir's estate. The bankruptcy court erroneously termed the Trustee's concern that general creditors would be penalized "inapposite," and improperly focused on the question of whether general creditors extended credit to Muir in reliance on Austin's account. 81 B 11761, slip op. at 15. That is not the issue. Rather, the issue is whether general creditors will be able to assert, for prompt and orderly disposition, claims to the debtor's property.

Congress allowed only three exceptions to the time limits for filing. Since Austin failed to file a timely claim, the securities in her account should have become part of Muir's general estate, pursuant to SIPA § 78fff–2(c)(1). Section 78fff(e) of SIPA states that the priorities of distribution from the general estate are governed by § 726 of the Bankruptcy Code. Under that section, late-filing claimants who have received notice of the proceedings are accorded third priority, behind timely-filing creditors. *See* 11 U.S.C. § 726(a)(2), (3) (1979). Thus, Congress clearly intended to provide for satisfaction of timely filed claims of general creditors before tardily filed customer claims. The court may not alter the distribution scheme established by Congress, even if it believes that the scheme inappropriately disregards SIPA's policy of protecting customers.

Under Bankruptcy Rule 3002(c)(6), late-filing claimants may recover if there is a surplus in the estate, after the timely filed claims of general creditors are satisfied. This assures that a windfall will not accrue to Muir's estate if Austin's claim is disallowed.

### 5. *Erroneous Interpretation of Policies Underlying SIPA*

SIPA contains no exception to justify allowing Austin's late claim. The solvency of the estate and the fact that SIPA has been fully reimbursed for its outlays, might be relevant if Austin's claim had been filed after the shorter, discretionary time limit set pursuant to Rule 3002(c), but prior to the six-month time bar of SIPA § 78fff–2(a)(3). Unfortunately, her claim was filed too late to be considered a customer claim entitled to priority. Accordingly, it is irrelevant whether she delayed filing a claim to see if she could obtain a more favorable distribution, and thus intended to manipulate the SIPA procedures, or acted with totally innocent intentions. Under the applicable provisions of SIPA and the Bankruptcy Code, Austin must wait until all general creditor claims are satisfied before she can recover.

### CONCLUSION

The court reverses the bankruptcy court's decision to allow Austin's claim. The trustee, after satisfying any timely filed claims of general creditors, is directed to satisfy Austin's claim out of any surplus assets remaining in the estate.

So ordered.