### In re CHICAGO PARTNERSHIP BOARD, INC., Debtor.

**Adversary No. 97 A 01673.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 8, 1999.

250

Mark L. Prager, John R. Landis, Jill L. Uylaki, Foley & Lardner, Chicago, IL, for Movant.

Steven B. Towbin, Peter J. Roberts, D'Ancona & Pflaum LLC, Chicago, IL, for Respondent.

J. William Holland, Holland & Holland, Chicago, IL, trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of J. William Holland, as Trustee (the "SIPA Trustee") for the liquidation of the business of the Chicago Partnership Board, Inc., and a hearing on the opposition to his determination regarding the claim of Fifth Third Bank of Northwestern Ohio, N.A., as Trustee for the F.M. Koch (d/b/a Kelko Products) Corporation Profit Sharing Plan ("Fifth Third Bank"). For the reasons set forth herein, the Court sustains the determination of the SIPA Trustee to disallow the claim of Fifth Third Bank in full.

### I. JURISDICTION AND PROCEDURE

The United States District Court for the Northern District of Illinois has exclusive jurisdiction over this proceeding pursuant to 15 U.S.C. § 78eee(b)(2)(A) and has removed this matter to this Court pursuant to 15 U.S.C. § 78eee(b)(4). The Court also has bankruptcy subject matter jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the District Court. This claim objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### II. FACTS AND BACKGROUND

Many of the material facts are uncontested. Prior to December 15, 1997, Chicago Partnership Board, Inc. (the "Debtor") was a registered broker/dealer located in Chicago, Illinois, engaged in the business of buying, selling, and trading a variety of limited partnership interests. The Debtor was a member of the Securities Investor Protection Corporation ("SIPC") and was registered with the Securities and Exchange Commission. In the ordinary course of its business, the Debtor purchased, sold and traded units of limited partnerships. The units were not offered for sale or purchase on any exchange. Among other things, the owners of limited partnership units were entitled to distributions from the respective limited partnerships. The Debtor offered units of limited partnerships for sale by preparing and circulating offering sheets entitled Units Available for Purchase ("UAFP") to potential purchasers. After circulating the UAFP, the Debtor attempted to sell the units listed on the UAFP by conducting a weekly auction.

In September 1997, Fifth Third Bank placed an order with the Debtor for the sale of 2500 units of Textainer Equipment Income Fund IV, LP (the "Textainer units"). See SIPA Trustee's Exhibit No. 2. On September 23, 1997, the Debtor sent a letter and several documents to Fifth Third Bank in order to effectuate the sale of the Textainer units. See Fifth Third Bank's Exhibit No. 1. The letter was sent to the following address: Fifth Third Bank Trustee Fbo FM Koch Corp. PSP Trust,

Fifth Third Center Mail Drop 1090E1, Cincinnati, OH 45263. *Id.*

By letter dated October 10, 1997, Christopher M. Caputo, a vice-president of Fifth Third Bank ("Caputo"), tendered to the Debtor documents authorizing the Debtor to sell Fifth Third Bank's Textainer units, together with the certificate issued by the partnership to evidence the Textainer units (the "Certificate"). *See* SIPA Trustee's Exhibit No. 3 and Fifth Third Bank's Exhibit Nos. 2 and 9. In the cover letter accompanying the documents, Caputo requested that "the proceeds of sale" be sent to H.W. Manley, V.P., Fifth Third Bank of N.W. Ohio, P.O. Box 1868 MD # 292932–9091, Toledo, Ohio 43603. *See* SIPA Trustee's Exhibit No. 3, p.1 and Fifth Third Bank's Exhibit No. 2. Among the documents sent by Caputo to the Debtor authorizing the transfer of the Textainer units were a Sale Agreement, Power of Attorney, Application for Transfer and Standard Terms and Conditions to Sale Agreement, all executed by Caputo. *See* SIPA Trustee's Exhibit No. 3 and Fifth Third Bank's Exhibit Nos. 3, 5, 6, and 8. The Sale Agreement executed by Caputo and tendered by Fifth Third Bank for the sale of the Textainer units included the following address: Fifth Third Center Mail Drop 1090E1, Cincinnati, OH 45263. *See* Fifth Third Bank's Exhibit No. 3, p. 4. In addition to the foregoing documents, Caputo sent the Certificate for 2,500 of the Textainer units. *See* Fifth Third Bank's Exhibit No. 9. The Certificate bears the legend "Non–Negotiable" on its face. *Id.*

Pursuant to the Standard Terms and Conditions to Sale Agreement executed by Caputo, the Sale Agreement became binding and enforceable when executed by Fifth Third Bank and the Debtor. The Sale Agreement was executed by Caputo on behalf of Fifth Third Bank and by the Debtor. The Power of Attorney submitted by Fifth Third Bank and executed by Caputo provided in relevant part:

irrevocably appoints [the Debtor] to be [Fifth Third Bank's] true and lawful special attorney-in-fact, with full power of substitution to exercise any and all rights, interests, powers, and duties with respect to or arising out of [Fifth Third Bank's] interest in Textainer Equipment Income Fund IV.

*See* Fifth Third Bank's Exhibit No. 5. The Sale Agreement, in conjunction with the Power of Attorney, authorized the Debtor to execute any and all documents necessary to transfer the Textainer units. The Textainer units were listed on a UAFP prepared by the Debtor.

The books and records of the Debtor, including the Debtor's computer database, indicated that the address for Fifth Third Bank concerning the Textainer units transaction was: Fifth Third Bank Trustee Fbo FM Koch Corp. PSP Trust, Fifth Third Center Mail Drop, Ralph Hodge, Fifth Third Center Mail Crop 1090E1, Cincinnati, OH 45263. A document entitled "New Sell Order" located in the books and records of the Debtor also indicated a registration address of Fifth Third Center Mail Drop 1090E1, Cincinnati, OH 45263.

On December 15, 1997, SIPC, a nonprofit membership corporation created by the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.,* filed an application to the District Court for the Northern District of Illinois, seeking an order determining that the customers of the Debtor were in need of the protections afforded by SIPA and commencing a liquidation proceeding pursuant to Chapter 7 of Title 11. Pursuant to the provisions of SIPA, the District Court entered an order which, inter alia, (1) concluded that the Debtor's customers were in need of protection under SIPA: (2) issued a protective decree pursuant to the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362; (3) appointed the SIPA Trustee; and (4) removed the liquidation proceeding to the United States Bankruptcy Court for the Northern District of Illinois pursuant to 15 U.S.C. § 78eee(b)(4).

On January 6, 1998, the Court entered an order (the "Claims Order") approving procedures for the filing of claims against the Debtor and for the dissemination of notices regarding related deadlines. *See* SIPA Trustee's Exhibit No. 10. Pursuant to the Claims Order and 15 U.S.C. § 78fff–2(a)(3), July 15, 1998 was established as the deadline for filing claims against the Debtor's estate. Specifically, the Claims Order stated:

All claims of customers ... with respect to the Debtor shall, except as provided in paragraphs G and H hereof, be filed with the SIPA Trustee as set forth herein, on or before July 15, 1998 or such claims shall be forever barred and precluded from participating in any distributions made to customers and creditors in this SIPA proceeding.

*Id.* at decretal ¶ I, p. 5.

Pursuant to the Claims Order and 15 U.S.C. § 78fff–2(a)(1), the SIPA Trustee published notice of the liquidation proceeding in the January 15, 1998 editions of the Chicago Sun Times, the Chicago Tribune, and the national edition of The Wall Street Journal (collectively, the "Publication Notices"). *See* SIPA Trustee's Exhibit Nos. 12, 13 and 14. The Publication Notices announced the commencement of the liquidation proceeding against the Debtor and specified in clear print that July 15, 1998 was the final claims bar date for the filing of all customer claims. *Id.*

In addition to the Publication Notices, the SIPA Trustee engaged Litigation Solutions, Inc. ("Litigation Solutions") to mail notice of the liquidation proceeding to all customers of the Debtor. The SIPA Trustee, using the Debtor's customers' names and addresses as they appeared in the Debtor's books and records (including the Debtor's computer database), prepared a name and address list of all of the Debtor's customers since December 1, 1996. The SIPA Trustee provided the name and address list to Litigation Solutions.

On January 15, 1998, Litigation Solutions mailed notice of the SIPA proceeding and other information to each of the customers on the name and address list. *See* SIPA Trustee's Exhibit No. 11. Included in this mailing was a claim form and instructions for completing the form. *Id.* The claim form and instructions explicitly stated that the claims bar date was July 15, 1998. *Id.* Included in this information was the statement:

No customer claim received by the Trustee after July 15, 1998 shall be allowed, except as ordered by the Bankruptcy Court upon application made on or before July 15, 1998, as provided in section 78fff–2(a)(3) of SIPA. Customer claims will be deemed filed only when received by the Trustee at the address shown above.

*Id.* at p. 5.

On January 15, 1998, the mailing regarding the disputed claim at bar was sent via first class mail to Fifth Third Bank Trustee Fbo FM Koch Corp. PSP Trust, Fifth Third Center Mail Drop 1090E1, Cincinnati, Ohio 45263. The Trustee obtained this Cincinnati address for Fifth Third Bank from the Debtor's computer records and the New Sell Order form. This address was also on the name and address list provided to Litigation Solutions. This mailing sent to Fifth Third Bank was never returned to the SIPA Trustee or Litigation Solutions, and the United States Post Office did not send the SIPA Trustee or Litigations Solutions notice that the mailing could not be delivered to Fifth Third Bank as addressed. This mailing was also sent to Fifth Third Bank as a customer on nine other accounts, including four customers with the address: Fifth Third Center, Maildrop 1090E1, Cincinnati, OH 45263.

Fifth Third Bank did not file the claim at bar with the SIPA Trustee on or before July 15, 1998 as required by the Claims Order and as clearly set forth in the notice published and mailed. After expiration of the claim filing period, on August 19, 1998, the SIPA Trustee received a letter from

H. William Manley ("Manley") of Fifth Third Bank. *See* SIPA Trustee's Exhibit No. 15 and Fifth Third Bank's Exhibit No. 11. Manley's letter requested the return of the Textainer units and stated that "[a] claim form was apparently sent to our Cincinnati operations center, but the address used was incomplete." *Id.* The letter further stated:

> Please advise as to how we can obtain the return of this security. Fifth Third Bank, Trustee, owns legal title thereto and owes a fiduciary duty to the beneficial owners, the participants of the F.M. Koch Profit Sharing Plan, to recover this plan asset.

*Id.*

The SIPA Trustee treated Manley's letter as customer claim number 2009. On September 25, 1998, the SIPA Trustee sent Fifth Third Bank a Notice of Trustee's Determination of Claim denying Fifth Third Bank's claim. *See* SIPA Trustee's Exhibit No. 16 and Fifth Third Bank's Exhibit No. 12. In particular, the SIPA Trustee stated: "[y]our letter setting forth a claim dated August 19, 1998 was received after July 15, 1998, the bar date for filing claims in this proceeding. Accordingly, your claim was not timely filed and is denied." *Id.*

On October 19, 1998, counsel for Fifth Third Bank sent a letter to counsel for the SIPA Trustee setting forth Fifth Third Bank's opposition to the SIPA Trustee's claim determination. *See* SIPA Trustee's Exhibit No. 17. Thereafter, on December 21, 1998, the SIPA Trustee exercised the Power of Attorney sent to the Debtor by Fifth Third Bank and transferred the Textainer units into the SIPA Trustee's name.

The parties stipulated to certain uncontested facts in a joint pretrial memorandum. The Court afforded the parties an evidentiary hearing and then took the matter under advisement.

## III. DISCUSSION

Fifth Third Bank has objected to the SIPA Trustee's determination to disallow its claim on the following bases: (1) the SIPA Trustee's notice to Fifth Third Bank of the commencement of the Debtor's liquidation proceeding was deficient; (2) the SIPA Trustee is estopped from contesting Fifth Third Bank's claim for the return of the Certificate; (3) the Certificate is a "customer name security" that must be returned to Fifth Third Bank under provisions of SIPA; and (4) return of the Certificate is appropriate under a rejected executory contract theory. The Court will discuss each argument in turn.

### A. Whether the SIPA Trustee Gave Fifth Third Bank Proper Notice

■ Fifth Third Bank contends that the notice it received regarding the commencement of the Debtor's liquidation proceeding was deficient. SIPA requires that the SIPA Trustee give notice of the commencement of SIPA proceedings by (1) publishing a notice "in one or more newspapers of general circulation in the form and manner determined by the court" and (2) mailing a copy of the notice "to each person who, from the books and records of the debtor, appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor." 15 U.S.C. § 78fff–2(a)(1).

The Court finds that the SIPA Trustee complied with the first prong of the statute. It is uncontroverted that the SIPA Trustee published notice of the proceeding in the Chicago Tribune, Chicago Sun Times and The Wall Street Journal on January 15, 1998. Fifth Third Bank does not dispute that the SIPA Trustee properly complied with this portion of the statute.

The real dispute centers around the second prong of the statute-the mailing notice requirement. It is undisputed that the SIPA Trustee mailed notice to Fifth Third Bank at the Cincinnati maildrop address that was contained on the Sale Agreement and the New Sell Order. It is also undis-

puted that the mailing was not returned to the SIPA Trustee or Litigations Solutions. Fifth Third Bank contends that notice to it was improper because the SIPA Trustee did not send the notice to Fifth Third Bank at the Toledo, Ohio address listed on the Certificate. Fifth Third Bank argues that the Certificate constitutes "books and records" of the Debtor and that address should have been utilized by the SIPA Trustee.

■ Compliance with SIPA only requires notice by publication and mail and does not require actual knowledge. or receipt of the notice. *See In re OTC Net, Inc.*, 34 B.R. 658, 660 n. 3 (Bankr.D.Colo. 1983) (citation omitted). There is a rebuttable presumption that the addressee of a properly addressed and mailed notice receives that notice. *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 104 (Bankr. S.D.N.Y.1997) (citation omitted). That presumption may be rebutted by "direct" and "substantial" evidence. *In re Government Secs. Corp.*, 107 B.R. 1012, 1020 (S.D.Fla.1989) (citations omitted). Fifth Third Bank failed to proffer direct and substantial evidence to demonstrate that it did not receive the mailing.

Even if Fifth Third Bank did not receive the mailing, the SIPA Trustee's Publication Notices in three newspapers satisfied due process. *See In re Blinder, Robinson & Co., Inc.*, 124 F.3d 1238, 1242–44 (10th Cir.1997) (actual notice unnecessary where mailing and publication, in combination, were reasonably calculated to apprise parties of SIPA liquidation); *Adler, Coleman Clearing*, 204 B.R. at 107 (fact that customer did not receive actual notice by mail of liquidation proceeding was irrelevant where notice was published in The New York Times and The Wall Street Journal); *Government Secs. Corp.*, 107 B.R. at 1019–22 (notice sufficient even though claimant argued that he did not receive notice sent to Peru and where only 20 to 30 copies of The Wall Street Journal were circulated in Lima, Peru); *OTC Net*, 34 B.R. at 660 n. 3

(constructive notice is sufficient under SIPA).

Accordingly, the Court finds that the SIPA Trustee's actions of mailing notice to Fifth Third Bank and publishing notice in newspapers of general circulation were reasonable. The SIPA Trustee complied with § 78fff–2(a)(1) and gave Fifth Third Bank proper and adequate notice. These two methods of notice, in combination, were reasonably calculated to apprise interested parties of the SIPA liquidation proceeding and afford them an opportunity to be heard. Thus, the Trustee's actions satisfied the due process requirements. *See In re Blinder, Robinson,* 124 F.3d at 1243. The Court rejects Fifth Third Bank's arguments to the contrary.

**B. *Whether the SIPA Trustee is Estopped***

■ Next, Fifth Third Bank argues that the SIPA Trustee should be estopped from determining that Fifth Third Bank's claim was not submitted by the July 15, 1998 bar date because a representative of the Debtor told a representative of Fifth Third Bank that the Certificate and related documents would be returned to Fifth Third Bank because no buyer could be found. According to Fifth Third Bank, this representation caused it to take no further action regarding the Textainer units because it expected that the Certificate would be returned. Fifth Third Bank contends that it relied on this statement by the Debtor's representative and that its reliance was reasonable. Further, Fifth Third Bank argues that it relied on this statement to its detriment and that the Trustee cannot now change his position on the return of the Certificate.

Manley, a vice president of Fifth Third Bank, testified in his deposition, which was admitted into evidence, that in January 1998, he telephoned the Debtor's offices and spoke with a representative of the Debtor, named Thelma Arevalo, regarding the Debtor's efforts to sell the Textainer units. *See* Manley Deposition at p. 12,

lines 7–24. According to Manley, Ms. Arevalo told him that a buyer for the Textainer units could not be found and that therefore the relevant documents and Certificate would be returned to Fifth Third Bank the first of February 1998. *Id.* In addition, Manley testified that at that point in time he was unaware of the SIPA proceeding. *Id.* at p. 15, lines 21–24. It was not until August 1998 that Manley again spoke to a representative of the Debtor and learned of the SIPA proceeding and that the claims bar date had passed. *Id.* Manley stated that after his January 1998 conversation with Ms. Arevalo, the matter "went off my radar scope at that point." *Id.*

■ The Seventh Circuit has indicated that application of the doctrine of equitable estoppel is particularly appropriate in bankruptcy proceedings. *Citation Cycle Co., Inc. v. Yorke,* 693 F.2d 691, 695 (7th Cir.1982). "The reasons for the general application of estoppel are simple enough-the doctrine prevents a party from benefitting from its own misrepresentations." *Black v. TIC Invest. Corp.,* 900 F.2d 112, 115 (7th Cir.1990). Estoppel arises when one party has made a misleading representation to another and the other party has reasonably relied to his detriment on that representation. *Id.* There are three requirements to establish a claim of estoppel against a party: (1) misrepresentation; (2) reasonable reliance on that misrepresentation; and (3) detriment. *Federal Deposit Ins. Corp. v. Rayman,* 117 F.3d 994, 1000 (7th Cir.1997) (citation omitted).

■ SIPA sets forth specific time and absolute limits for filing claims. Pursuant to § 78fff–2(a)(3), "[n]o claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice under paragraph (1) shall be allowed...." 15 U.S.C. § 78fff–2(a)(3). Under SIPA, the time limit for filing claims is mandatory and absolute and may not be extended by the exercise of some power of equity. *See Blinder, Robinson,* 124 F.3d at 1243 ("The six month time-bar contained in § 78fff–2(a)(3) of SIPA is mandatory and absolute.") (citation omitted); *Adler, Coleman Clearing,* 204 B.R. at 103 ("Section 78fff–2(a)(3) is an absolute bar to late filed claims.") (citations omitted); *In re Government Secs. Corp.,* 95 B.R. 829, 832 (S.D.Fla.1988) ("There is nothing in the applicable legislative history of SIPA or case law under SIPA, which permits a departure from strict adherence to the language of that section, by the creation of an additional exception, on 'equitable' grounds.") (citations omitted).

The SIPA Trustee's Publication Notices and mailing clearly set forth July 15, 1998 as the date by which all customer claims must have been submitted in compliance with the Court's Claims Order. Fifth Third Bank was required to file its written statement of claim concerning the Textainer units on or before July 15, 1998. *See* 15 U.S.C. § 78fff–2(a)(2)–(3). The letter upon which Fifth Third Bank relied as its written statement of claim was received on August 19, 1998, over one month after the July 15, 1998 bar date. Hence, the SIPA Trustee was correct to disallow Fifth Third Bank's claim.

Section 78fff–2(a)(3) allows for a discretionary extension of that bar date for three types of claimants: (1) the United States; (2) a State or political subdivision thereof; and (3) an infant or incompetent person without a guardian. 15 U.S.C. § 78fff–2(a)(3). Undisputedly, Fifth Third Bank does not fall under any of these three express exceptions. The case law is clear that there is no additional exception on an "equitable" basis. *See Adler, Coleman Clearing,* 204 B.R. at 103; *Government Secs. Corp.,* 95 B.R. at 832. As a result, the SIPA Trustee's disallowance of Fifth Third Bank's claim was proper and is sustained.

■ Even if the Court applied the doctrine of equitable estoppel, the Court finds

that Fifth Third Bank has not established all of the requisite elements. While Ms. Arevalo's statement to Manley might be considered a misrepresentation, his reliance on that statement was not reasonable. A claimant in a SIPA proceeding who received proper written notice of the claims bar date may not reasonably rely on contrary or differing information which is orally conveyed to the claimant. *See, e.g., Miller v. Austin,* 72 B.R. 893, 896–99 (S.D.N.Y.1987). It is undisputed that the SIPA Trustee properly gave notice of the claims bar date in the Publication Notices and the mailing, and that Fifth Third Bank received the mailing. Thus, Fifth Third Bank's reliance on Ms. Arevalo's alleged oral representation to Manley was not reasonable. Further, the Court finds it unreasonable for Fifth Third Bank to have not promptly followed up on the alleged promised return of the Certificate. Manley spoke to Ms. Arevalo in January 1998. It was not until August 1998 that he again telephoned to ascertain the status of the Certificate. The Court finds this lapse of time further demonstrates that it was not reasonable for Manley to rely on the oral representation, but then wait over six months while doing nothing else. In sum, Fifth Third Bank has failed to establish all the elements of equitable estoppel.

### C. *Whether the Textainer Units Are "Customer Name Securities"*

Next, Fifth Third Bank argues that the Textainer units and Certificate qualify as "customer name securities" as defined by SIPA. Fifth Third Bank maintains that a claim for customer name securities need not be filed within the six-month statutory time period applicable to other customer claims. SIPA defines "customer name securities" as:

[S]ecurities which were held for the account of a customer on the filing date by or on behalf of the debtor and which on the filing date were registered in the name of the customer, or were in the process of being so registered pursuant to instructions from the debtor, *but does not include securities registered in the name of the customer which, by endorsement or otherwise, were in negotiable form.*

15 U.S.C. § 78*lll*(3) (emphasis supplied). The status of whether a security is a "customer name security" is determined by the negotiability of a security, not its identifiability. *In re Bevill, Bresler & Schulman, Inc.,* 59 B.R. 353, 361 (D.N.J.1986). The definition of "customer name securities" is confined to securities that the broker/dealer "could not negotiate or otherwise misappropriate absent some form of aggravated misconduct, such as forgery ... customer name securities must be non-negotiable and registered in the name of the customer...." *Id.* at 368; *In re Bell & Beckwith,* 104 B.R. 842, 858 (Bankr.N.D.Ohio 1989) ("SIPA's definition of customer name securities protects only those securities which *cannot* be negotiated.") (emphasis in original).

It is undisputed that Fifth Third Bank ordered a sale of the Textainer units through the Debtor and that the Debtor did not locate a buyer for the Textainer units prior to the filing date. Further, the Textainer units, represented by the Certificate, were undisputedly registered in the name of Fifth Third Bank on the books and records of the Debtor as of the filing date. Consequently, for purposes of determining whether the Certificate of Textainer Equipment Income Fund IV LP is a customer name security within the meaning of § 78*lll*(3), the Court need only determine whether the Certificate was in negotiable form.

The Certificate states on its face in bold, large typeface **"NON–NEGOTIABLE."** *See* Fifth Third Bank's Exhibit No. 9. This legend is at the heart of Fifth Third Bank's claim on this ground. Furthermore, the Certificate provides in small print that no sale or transfer of the Textainer units may occur without approval of the managing general partner and that any unauthorized assignment or transfer

of the Certificate shall be void. *Id.* Fifth Third Bank argues that as a result of the language on the Certificate, it is nonnegotiable, and thus, constitutes a customer name security within the meaning of SIPA. The SIPA Trustee, on the other hand, argues that the Court should consider not only the Certificate terms, but also the Power of Attorney duly executed by Fifth Third Bank and submitted to the Debtor with the executed Sale Agreement, which gave the Debtor the power to legally transfer the Textainer units. Therefore, according to the SIPA Trustee, the Textainer units were negotiable and not "customer name securities."

The Court finds that the Power of Attorney executed by Fifth Third Bank and submitted to the Debtor with the Sale Agreement gave the Debtor the power to legally transfer and negotiate the Textainer units. The Power of Attorney provided that the Debtor is vested "with full power of substitution to exercise any and all rights, interests, powers, and duties with respect to or arising out of [Fifth Third Bank's] interest in" the Textainer units. *See* Fifth Third Bank's Exhibit No. 5. This language gave the Debtor and subsequently the SIPA Trustee the power to legally transfer the Textainer units. The Trustee's subsequent successful transfer of the Textainer units into the SIPA Trustee's name confirms the actual negotiability of the Textainer units with the Power of the Attorney. Therefore, the Court finds that the Certificate was negotiable and the Textainer units are not "customer name securities" for purposes of § 78*lll*(3).

D. ***Whether Fifth Third Bank Has an Allowable Executory Contract Claim***

■ Lastly, Fifth Third Bank argues that the Sale Agreement between the Debtor and Fifth Third Bank was executo-

ry within the meaning of 11 U.S.C. § 365 because obligations remained due from both parties. Pursuant to Fifth Third Bank's argument, because the Sale Agreement was an executory contract, the SIPA Trustee's failure to assume same within sixty days of the filing date, deems the Sale Agreement rejected, and thus, Fifth Third Bank is entitled to the return of the Certificate.

■ SIPA provides that "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3 and 5 and subchapters I and II of chapter 7 of Title 11." 15 U.S.C. § 78fff(b). *See also Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,* 229 B.R. 273, 279 (Bankr.S.D.N.Y. 1999) (a SIPA proceeding is essentially a bankruptcy liquidation). SIPA does not provide protection for claims based on executory contracts except for those which may be raised by brokers or dealers. *See* 15 U.S.C. § 78fff–2(e)(1).[1] Other claimants are not entitled to preferential treatment from claims arising out of a broker's failure to complete a sell order; such claims are equivalent to general unsecured claims, not entitled to priority treatment. *See, e.g., In re Adler Coleman Clearing Corp.,* 195 B.R. 266, 276 (Bankr.S.D.N.Y. 1996); *In re A.R. Baron Co., Inc.,* 226 B.R. 790, 796 (Bankr.S.D.N.Y.1998). It is undisputed that Fifth Third Bank was acting as a Trustee for a pension plan, not a broker or dealer. Thus, it does not have a claim premised upon a broker/dealer executory contract under SIPA.

■ "For purposes of the Bankruptcy Code, an executory contract is one in which the obligations of each party remain substantially unperformed." *In re C & S*

---

1. Section 78fff–2(e)(1) provides in relevant part:

Any contract of the debtor for the purchase or sale of securities in the ordinary course of its business with other brokers or dealers which is wholly executory on the filing date shall not be completed by the trustee, except to the extent permitted by SIPC rule. 15 U.S.C. § 78fff–2(e)(1).

*Grain Co., Inc.,* 47 F.3d 233, 237 (7th Cir.1995) (citation omitted). The Seventh Circuit limits the definition of executory contract to those contracts in which significant unperformed obligations remain on each side. *In re Streets & Beard Farm Partnership,* 882 F.2d 233, 235 (7th Cir. 1989).

The Sale Agreement between Fifth Third Bank and the Debtor was not an executory contract because no substantial performance remained to be completed on the part of Fifth Third Bank. When it delivered the Sale Agreement, Certificate, Power of Attorney and other documents to the Debtor, Fifth Third Bank completed its performance, notwithstanding that the Debtor performed some of its obligation by listing the Textainer units on the UAFP, but had not completed its obligations under the Sale Agreement. Accordingly, the Court finds that the transaction was not an executory contract. Hence, the SIPA Trustee did not have an obligation to assume or reject the contract pursuant to 11 U.S.C. § 365.

 Even if this Court were to find the Sale Agreement was an executory contract, Fifth Third Bank was still required to file its claim by the bar date—July 15, 1998. The SIPA Trustee did not assume or reject the executory contract within sixty days of the filing date. Thus, under § 365(d)(1), the SIPA Trustee is deemed to have rejected the contract. Pursuant to § 365(g), rejection of an executory contract at worst constitutes a deemed breach of the contract. Fifth Third Bank would only have a claim as a general unsecured creditor. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("Damages on the contract that result from the rejection of an executory contract . . . receive the priority provided general unsecured creditors."); *S.N.A. Nut Co. v. Haagen–Dazs Co., Inc. (In re S.N.A. Nut Co.),* 191 B.R. 117, 120 (Bankr.N.D.Ill.1996) ("If the debtor rejects the executory contract, the injured party receives a pre-petition claim for damages resulting from the rejection which is af-

forded general unsecured priority.") (citations omitted). Even if Fifth Third Bank has a claim for rejection damages under § 365, it was required to file its claim by the SIPA six-month bar date, not under the provisions of Federal Rule of Bankruptcy Procedure 3002.

Bankruptcy Rule 3002 establishes the time by which an unsecured creditor must file a proof of claim. Bankruptcy Rule 3002(c) provides five exceptions to the general rule that a proof of claim is timely filed if it is not later than ninety days after the first date set for the meeting of creditors under 11 U.S.C. § 341. *See* Fed. R. Bankr.P. 3002(c). Bankruptcy Rule 3002(c)(4) specifies that "[a] claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the ·court may direct." Fed. R. Bankr.P. 3004(c)(4). These exceptions in Bankruptcy Rule 3004, including Rule 3004(c)(4), do not apply in SIPA proceedings. *Miller,* 72 B.R. at 897 ("Finally, it should be noted that the present Bankruptcy Rules do not provide for an exception to the six-month time limit [under SIPA].").

 Bankruptcy Rule 3002 does not apply to SIPA proceedings because it directly conflicts with § 78fff–2(a)(3) of SIPA which provides that the claims of any customer or creditor must be filed prior to the six-month claims bar date. To the extent that the provisions of the Bankruptcy Code conflict with the provisions of SIPA, SIPA shall control. *Government Secs. Corp.,* 107 B.R. at 1022–23; *Government Secs. Corp.,* 95 B.R. at 832–33; *Miller,* 72 B.R. at 897. "A bankruptcy provision is 'inconsistent' with SIPA if it conflicts with an explicit provision of the Act, or if application would substantially impede fair and effective operation of the Act without providing significant countervailing benefits." *In re Government Secs. Corp.,* 111 B.R. 1007, 1010 (S.D.Fla.1990), *aff'd,* 972 F.2d 328 (11th Cir.1992) (citation omitted). If this Court were to apply Bankruptcy Rule 3004(c)(4) to this SIPA proceeding, it would contravene the terms

of § 78fff–2(a)(3) and would thus impede the fair and effective operation of SIPA. "[E]ven if the Bankruptcy Code presently provided for an express exception to the time limits for filing, the provision would not be applicable to SIPC liquidations since it would contradict the clear words of SIPA § 78fff–2(a)(3)." *Miller*, 72 B.R. at 897 (citation omitted).

In sum, even if Fifth Third Bank had a claim for rejection damages, it was required to file that claim by or before July 15, 1998. Because Fifth Third Bank did not file its claim until August 1998, the Court sustains the SIPA Trustee's disallowance of Fifth Third Bank's claim.

### IV. *CONCLUSION*

For the foregoing reasons, the Court sustains the Trustee's determination to disallow the claim of Fifth Third Bank in full.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.